IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANNA NIETO, BETTY DELOSSANTOS,
PATRICK SANCHEZ, SALLY NETSCH,
PHYLLIS DEBAUN, and MARY GONZALES,

                Plaintiffs,

vs.                                              No. CIV 96-1225 MV/JHG

QUDRAT KAPOOR, ORSON TRELOAR,
RON SHAFER, JAMES KNOBLE, JACK CHUBB,
KEITH MACKELLER, Individually and in their Official
Capacities and EASTERN NEW MEXICO MEDICAL
CENTER,

                Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant Kapoor, M.D.'s Motion for Summary Judgment, filed May 5, 1997 **[Doc. No. 39]**, ENMMC Defendants' Motion for Partial Summary Judgment on Plaintiffs' Negligence and Prima Facie Tort Claims, filed December 3, 1997 **[Doc. No. 90]**, ENMMC Defendants' Motion for Partial Summary Judgment on Plaintiffs' Section 1983 and Section 1985 Claims, filed December 16, 1997 **[Doc. No. 104]**, Eastern Defendants' Motion to Exclude Testimony of Dr. T. Zane Reeves, filed January 16, 1998 **[Doc. No. 146]**, Defendant Kapoor's Motion to Dismiss or in the Alternative to Strike Certain of Plaintiffs' Witnesses, filed June 5, 1998 **[Doc. No. 189]**, ENMMC Defendants' Motion for Partial Summary Judgment on Back Pay, Front Pay and Prejudgment Interest for Plaintiffs Nieto, DeLosSantos, Netsch, DeBaun and Gonzales, filed August 26, 1998 **[Doc. No. 210]**, and ENMMC Defendants' Motion for Partial

Summary Judgment on Plaintiffs' § 1983 Claims (No Action Under Color of Law by Dr. Kapoor), filed August 31, 1998 **[Doc. No. 215]**.  The Court, having reviewed the pleadings and relevant law and being otherwise fully informed, finds that the motions are not well taken and will be **denied**.  The Court will dismiss, however, Plaintiff Betty DeLosSantos constructive discharge claim.

## Discussion

In an amended complaint in an action which Defendants have removed to this Court, Plaintiffs state that Defendant Kapoor is a physician staffing the radiation/oncology department at Eastern New Mexico Medical Center (ENMMC), a public hospital entity owned by Chaves County.  Plaintiffs, all former ENMMC employees in that department, claim that for several years Defendant Kapoor subjected them to verbal and emotional abuse, routinely made disparaging and offensive remarks pertaining to minorities and women, repeatedly used offensive inappropriate language regarding race and gender in public in the department, made physical contact of various degrees with them, interfered with their employment duties, and generally created a hostile work environment in the department.

Plaintiffs also allege that Defendants Treloar, Shafer, Knoble, Chubb, MacKeller, as current or former management employees at ENMMC, took no action despite receiving complaints concerning Defendant Kapoor's behavior.  Plaintiffs have brought claims, therefore, sounding in contract and tort and alleging violations of both 42 U.S.C. § 1983 and § 1985.

Defendant Kapoor, while admitting that he provides radiation/oncology services at ENMMC, denies all other allegations.  The ENMMC Defendants state that Defendant Kapoor is an independent contractor of radiation oncology services at ENMMC, explain that Defendant Treloar is Vice President of Medical Affairs at ENMMC, that Defendant Knoble was Chief Executive Officer until

May 1995, that Defendant Shafer has been the CEO since that time, and also deny all other allegations.

Due to Plaintiffs' lack of response, the Court has previously granted Defendant Kapoor's motions for partial summary judgment on claims of negligence and prima facie tort, and the ENMMC Defendants' motions for partial summary judgment on Plaintiffs' contract and implied contract claims. In one of their pleadings, a response to Doc. No. 146, Plaintiffs agree that they have effectively withdrawn their contract claims.

## Discussion

I. The Motions for Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Under this standard, the moving party initially carries the burden of pointing out to the trial court that there is an absence of evidence to support the nonmoving party's case, although the moving party "need not affirmatively negate the nonmovant's claim in order to obtain summary judgment." Allen v. Muskogee, Oklahoma, 119 F.3d 837, 840 (10th Cir. 1997), cert. denied, 118 S.Ct. 1165 (1998), citing Celotex v. Catrett, 477 U.S. 317, 322-23, 325 (1986). The Court examines the factual record and all reasonable inferences therefrom in the light most favorable to the nonmoving party, Allen, 119 F.3d at 839-40, and materiality of facts in dispute, if any, is dependent upon the substantive law, id. at 839, citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Once the movant has met this burden, Rule 56 requires the nonmovant to go beyond the pleadings and show, through affidavits, depositions, answers to interrogatories, and the

3

like that there is a genuine issue for trial. <u>Allen</u>, 119 F.3d at 841, <u>citing</u> <u>Celotex</u>, 477 U.S. at 324; <u>see also</u> <u>Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1988). Conclusory allegations are not enough, <u>Adler v. Wal-Mart Stores, Inc.</u>, __ F.3d __, 1998 WL 247700 at *4 (10th Cir. 1998), but summary judgment "is warranted only if the uncontroverted material facts establish that the moving party is entitled to judgment as a matter of law." <u>David v. City and County of Denver</u>, 101 F.3d 1344, 1355 (10th Cir. 1996), <u>cert. denied</u>, 118 S.Ct. 157 (1997).

A.     Defendant Kapoor, M.D.'s Motion for Summary Judgment

At an early stage in the proceedings Defendant Kapoor moved for summary judgment, claiming that as a private actor not acting under color of state law he could not be held liable under § 1983. In support of this contention Defendant Kapoor provided in his pleadings answers to interrogatories of Defendants Knoble, Shafer and Treloar and an affidavit from Defendant Shafer, all stating that Defendant Kapoor is not an ENMMC employee, has no control over ENMMC staff, and is merely a private physician with hospital privileges.

Whether portrayed as state action or as the action of an individual under color of state law, Fourteenth Amendment requirements are identical and demand a two-part approach. *Lugar v. Edmonson Oil*, 457 U.S. 922, 937 (1982). "First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Id.* "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Id.* Elaborating on these principles, the Tenth Circuit Court of Appeals explains that while "state employment is generally sufficient to render the defendant a state actor," *Jojola v. Chavez*, 55 F.3d 488, 493 (10th Cir. 1995) *quoting Lugar*, 457 U.S. at 935-36 n.18, not all torts committed by state employees will support a color of law claim.

4

*Jojola*, 55 F.3d at 493.  Moreover *Jojola* requires a real nexus between an employee's misuse of authority and the alleged violation for courts to find state action.  *Id.*  Finally, *Woodward v. City of Worland*, 977 F.3d 1392 (10th Cir. 1992), *cert. denied sub nom. Woodward v. Seghetti*, 509 U.S. 923 (1993) strongly suggests, in examining a qualified immunity defense raised in an on the job sexual harassment claim, that only those with supervisory control or authority over plaintiffs can be state actors for purposes of the Equal Protection Clause.  *Id.* at 1400-01.  Due to the allegations in this case the parties focus, of course, only on the second *Lugar* requirement.

Initially the Court addresses the insinuation that Defendant Kapoor is no more a state actor than a private physician treating patients in her offices, and finds no merit in this proposition. Plaintiffs have filed affidavits disputing Defendant Kapoor's lack of authority and control over them, and provided additional documentation showing that Defendant Kapoor signed a policies and procedures manual in his capacity as "Medical Director, Radiation Oncology," had his name included in an ENMMC Yellow Pages ad depicting him as a radiation oncologist in ENMMC's cancer treatment center, represented to licensing authorities that his professional address was at the cancer center, and wrote to those authorities on cancer center letterhead.  Moreover, Plaintiffs point out that in their answer to the original complaint in this action, the ENMMC Defendants admit that Defendant Kapoor directs patient care and treatment in the area of radiation oncology.  A physician who directs patient care can hardly hope to do so without also directing technical staff.  The Court has no trouble concluding, therefore, that there is at the very least a material issue of apparent authority both as to Defendant Kapoor's acting on behalf of ENMMC and as to his supervisory control over the Plaintiffs in this case.  Apparent authority can serve as one basis of a state action claim.  *Jojola*, 55 F.3d at 493.

The allegations presented in the complaint demonstrate the existence of a real nexus in this

case between Defendant Kapoor's conduct and his badge of state authority. Defendant Kapoor is the director of the radiation oncology center. Plaintiff's description of events place them at the very center of Defendant Kapoor's responsibilities toward the hospital, in the daily routine of patient care and staff interaction. Unlike the violations in *Jojola*, where there were no allegations of the exercise of state authority in the luring of a student into a classroom by a janitor, *id.* at 494, the actions complained of here were directly related to the daily contact Plaintiffs had with Defendant Kapoor and to the common purpose of all parties' presence at the hospital: the treatment through radiation of cancer patients. Defendant Kapoor's conduct and actions flowed directly from his responsibilities as cancer center director, thus creating the existence of a real nexus and meeting the requirements of *Jojola*.

Defendant Kapoor places great reliance on *Woodward*, yet the facts as alleged there are markedly different than here. A key to *Woodward*'s holding was the lack of supervisory control held by the harassers over the victims, and as Plaintiffs recognize, the authority of the Defendant over the victims is critical in the analysis. *See Woodward*, 977 F.3d at 1400-01. Because there is a genuine factual issue as to Defendant Kapoor's authority over Plaintiffs, not only is *Woodward* distinguishable from the case at bar, then, it supports the Court's determination that summary judgment on Defendant Kapoor's color of state law motion is improper.

The Court also will deny ENMMC Defendants' Motion for Partial Summary Judgment on Plaintiffs' § 1983 Claims (No Action Under Color of Law by Dr. Kapoor) [Doc. No. 215].

B. ENMMC Defendants' Motion for Partial Summary Judgment on Plaintiffs' Section 1983 and Section 1985 Claims.

In this motion the ENMMC Defendants, in denying that they are state actors, argue essentially that while Chaves County owns ENMMC, there is no connection between the county and the hospital sufficient enough to make the ENMMC Defendants' actions state action for either § 1983 or § 1985 purposes. Citing case law that focuses on relationships between the state and private parties, the ENMMC Defendants aver that ENMMC does not receive funds directly from Chaves County, that ENMMC employees are not county employees, that Chaves County does not approve or acquiesce in any of the day-to-day operations of the hospital, and that in general Chaves County does not manage ENMMC.

Plaintiffs counter without dispute from Defendants that ENMMC benefits from many advantages only available to governmental entities. Specifically, Plaintiffs allege that Chaves County established and operates ENMMC pursuant to the New Mexico Hospital Funding Act, N.M. Stat. Ann. § 4-48B-1 (Michie 1992), that Chaves County appoints the hospital board, that at least one county commissioner sits on that board, that ENMMC by its own admission recognizes that it is subject to New Mexico's Open Meetings Act, N.M. Stat. Ann. § 10-15-1 (Michie 1998), that the hospital enjoys the protection of New Mexico's Tort Claims Act, N.M. Stat. Ann. § 41-4-1 (Michie 1998), is subject to budgetary oversight by the State, holds itself out to be a governmental entity, and claims to be a state entity in judicial proceedings in order to avoid paying jury fees chargeable to all non-governmental entities.

These differing claims over the nature of ENMMC might preclude summary judgment on its color of law motion. Yet the Court need not precisely parse out Defendants' and Plaintiffs' claims,

since case law from the Tenth Circuit provides a close fit and persuades this Court that ENMMC is a state actor. In *Milo v. Cushing Municipal Hospital*, 861 F.2d 1194 (10th Cir. 1988) the court held that a hospital, run by a private entity but created by a city and leased to a hospital authority, was a state actor for purposes of a § 1983 claim.[1]  One key point in *Milo* that supported this conclusion was the economic interaction between the city and the hospital, *id.* at 1196, which Defendants aver and Plaintiffs do not deny is not present here.[2]  However, the Court need not dwell on financial connections between Chaves County and ENMMC, or the lack thereof, for a premise central to *Milo* is persuasive: a public entity can not insulate itself from constitutional obligations and liabilities by delegating responsibility to another party. *See id.* at 1197.

Defendants, in their stressing ENMMC's financial independence, strive to paint this case as one involving purely private action occurring on public property, then argue that the mere fact that certain conduct occurs on public property is not sufficient to establish state action. The Court has no difficulty with this last proposition, *see Gallagher v. "Neil Young Freedom Concert"*, 49 F.3d 1442, 1452 (10th Cir. 1995), only Defendants' underlying premise. Unlike the other private action cases Defendants cite, the acts or omissions of ENMMC Defendants involve not private action on public property but the acts of a public entity, arguably with some independence from its sponsoring authority, but a public entity nevertheless which could not exist as it does now without its intimate

---

[1] In this case, of course, ENMMC Defendants do not go so far as to state that ENMMC is a private entity, although they all but make this claim.

[2] Although Plaintiffs argue that Chaves County established ENMMC, they provide no funding details and do not deny Defendants' contention that the hospital does not receive funding from the County, or that the County does not receive any of the funds generated by ENMMC. The Court also notes that Plaintiffs have filed, without leave, a supplemental response to Defendants' motion. While the Court has not considered this pleading for purposes of this opinion, it indicates that Chaves County has undertaken substantial bond obligations for the purpose of creating a medical center. The financial connection between Chaves County and ENMMC, therefore, may ultimately prove very relevant in this case.

association with Chaves County.  Because ENMMC enjoys the benefits of being a public hospital, it also must bear the related burdens.

The Court's conclusion here makes the consideration of Defendants' § 1985 argument unnecessary.

> C. ENMMC Defendants' Motion for Partial Summary Judgment on Plaintiffs' Negligence and Prima Facie Tort Claims.

With this motion ENMMC Defendants seek judgment as a matter of law.  Arguing in part that Plaintiffs' negligence count can only encompass the tort of negligent supervision, which requires that Defendant Kapoor acted outside the scope of his activities at ENMMC, Defendants aver that Plaintiffs have not alleged in their complaint that Defendants negligently supervised Defendant Kapoor.  ENMMC Defendants also argue that they do not, under New Mexico law, have a duty of ordinary care toward their employees, and suggest that the existence of such a duty would lead to unbridled litigation where there would not be enough courthouses or judges in New Mexico to handle the caseload.[3]  The ENMMC Defendants also claim that to satisfy prima facie tort requirements, their actions must have been lawful, and that Plaintiffs have only alleged unlawful conduct on the part of Defendants.

In response, Plaintiffs argue that their negligence count is not solely limited to the tort of negligent supervision, and that New Mexico imposes a duty of ordinary care on all its citizens.  Sidestepping the issue of prima facie tort's lawful conduct requirement, Plaintiffs also argue that the Court should allow the count to proceed, and rule on its applicability in this case only at the close of the evidence.

---

[3] Obviously, ENMMC Defendants have little faith in the status of employer-employee relations in New Mexico.

The Court disagrees with Defendants' contention that it should grant summary judgment on the negligence claim.  Defendants argue that New Mexico law, as explained in *Los Ranchitos v. Tierra Grande*, 861 P.2d 263 (N.M. Ct. App. 1993), only allows the tort of negligent supervision as a recovery against supervisors in instances where an employee has acted outside the scope of employment.  The Court does not read *Los Ranchitos* so narrowly.  Rather, *Los Ranchitos* stands for the unremarkable proposition that the tort of negligent supervision is available to a plaintiff as an alternative theory of liability.  *Id.* at 269.   Moreover, *Silva v. State*, 745 P.2d 380 (1987) holds that an employee has a duty of ordinary care in the discharge of his employment duties.  *Id.* at 386.  The Court is unwilling to now hold, therefore, that under New Mexico law ENMMC Defendants did not have a duty of ordinary care toward Plaintiffs.

The Court also declines to grant summary judgment on the prima facie tort count.  It is axiomatic that under New Mexico law, prima facie tort is available only when otherwise lawful conduct is at issue.  *Schmitz v. Smentowski*, 785 P.2d 726 (1990); *Silverman v. Progressive Broadcasting, Inc.*, __ P.2d __, 1998 WL 466999 (N.M. Ct. App. 1998); *Beavers v. Johnson Controls World Serv.*, 901 P.2d 761, 766 (N.M. Ct. App. 1995), *cert. denied*, 898 P.2d 120 (1995).  ENMMC Defendants explain that Plaintiffs have alleged only unlawful conduct in their first amended complaint, so that they can not also advance that these acts met the required lawfulness of prima facie tort.  *See Silverman*, 1998 WL at *10.  Yet under precepts of notice pleading, *Conley v. Gibson*, 355 U.S. 41, 48 (1955), the Court finds that the complaint sufficiently sets out allegations that could encompass prima facie tort.  The Court is guided here by *Beavers*, where despite not meeting the requirements of intentional infliction of emotional distress the plaintiff prevailed on a prima facie tort claim.  Given the allegations from deposition testimony of rude and abusive behavior on the part of Defendant

Kapoor, the Court will not here strike the prima facie tort count and will allow this claim to proceed.

D.   ENMMC Defendants' Motion for Partial Summary Judgment on Back Pay, Front Pay and Prejudgment Interest for Plaintiffs Nieto, DeLosSantos, Netsch, DeBaun, and Gonzales.

In this motion ENMMC Defendants do not contest the events occurring in the radiation oncology department but argue that because Plaintiffs Nieto, DeLosSantos, Netsch, DeBaun and Gonzales either transferred to other departments at ENMMC before leaving the hospital and remained there more than a short time (Nieto, DeLosSantos, Gonzales), or moved out of town because their spouses found employment elsewhere (Netsch, DeBaun), they were not, as a matter of law, constructively discharged.

Constructive discharge "occurs when a reasonable person in the employee's position would view the working conditions as intolerable. That is to say the working conditions, when viewed objectively, must be so difficult that a reasonable person would feel compelled to resign." *Yearous v. Niobrara County Mem. Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997), *cert. denied*, 118 S.Ct. 1515 (1998). A plaintiff's subjective views are irrelevant, and to prevail she essentially must show that she had no other choice but to quit. *Id.* While an employee may not claim constructive discharge if she lets a significant lapse of time pass between the wrongful conduct and her resignation, *Smith v. Bath Iron Works Corp.*, 943 F.2d 164, 167 (1st Cir. 1991), an employee must reasonably explore any option short of resignation. *Yearous*, 128 F.3d at 1357. The law recognizes, moreover, that unwanted transfers may give rise to a claim of constructive discharge. *Stamey v. Southern Bell Tel. & Tel. Co.*, 859 F.2d 855, 860 n.11 (11th Cir. 1988), *cert. denied*, 490 U.S. 1116 (1989); *Bradford v. Norfolk Southern Corp.*, 54 F.3d 1412, 1420 (8th Cir. 1995); *Madow v. Proctor & Gamble Co., Inc.*, 107 F.3d 846, 852 (11th Cir. 1997).

After ENMMC eliminated her position, Plaintiff Nieto left oncology to work in the emergency room from July 1996 until March 1997. In May 1995 Plaintiff DeLosSantos also left oncology and worked in the Transitional Care Unit (TCU) until August 1996. Plaintiff Netsch left ENMMC when her husband found a job outside the state. Plaintiff Gonzales received two days off with pay from ENMMC in order to help her decide where she wanted to work besides radiation oncology, and she eventually went to work in the nursery. Plaintiff DeBaun also left ENMMC when her husband relocated out of state. Claiming that these events preclude a finding of constructive discharge, ENMMC Defendants seek, therefore, partial summary judgment on this issue.

Plaintiffs offer various responses where they dispute ENMMC Defendants' claims. Plaintiff Nieto asserts that she sought another job at ENMMC after July 1996 but only found one, which involved a 12 hour night shift and caused a hardship to her family. Moreover, Plaintiff Nieto alleges that she could not continue working in radiation oncology both because Defendant Kapoor was still there and because the hospital responded to her complaints by eliminating her position. Plaintiff DeLosSantos claims that despite being a 30 year employee of ENMMC, ENMMC did not find her other employment, and that she found work in the Transitional Care Unit herself, where due to injury she sustained reductions in her hours worked, and ultimately decided to work outside ENMMC. Plaintiff Gonzales testified in a deposition that when she sought a transfer from radiation oncology, she was forced to work in ENMMC's nursery department, which she had specifically identified upon her initial employment as a place where she did not want to work. Plaintiff Gonzales left ENMMC altogether after a short time in the nursery.[4]  Plaintiff Netsch explains that she had decided to leave

---

[4] Ms. Gonzales testified in a deposition:
   With nurses, it's just like some of them cannot work with elderly, and with me, it's just the babies, it was just I feel that if I would not ever--I wouldn't be able to live with myself if a

ENMMC, but moved her resignation up by three weeks because of Defendant Kapoor's conduct. Finally, Plaintiff DeBaun avers that she and her husband decided to relocate as a direct consequence of that conduct.  In an exit interview with ENMMC Director of Employee relations Susan Craig Plaintiff DeBaun, a senior radiation therapist with fourteen years' experience, describes in detail her conflicts with Defendant Kapoor, alleging that he would go to the men in the department before coming to her with a problem, would berate her in front of the entire department, would be abusive on a day to day basis, would scream at her in front of other employees, would not communicate with her for several days despite treating 15 to 25 patients a day, would present incorrect complaints against her to her supervisor, and on one occasion intimidated the staff by successively confronting each person concerning work problems.

Drawing all reasonable inferences in a light most favorable to these Plaintiffs, the Court concludes that with the exception of Ms. Betty DeLosSantos, there are genuine issues of material fact concerning their employment at ENMMC that preclude the granting of summary judgment on the issue of constructive discharge.  The circumstances of Plaintiff Nieto's being forced out of oncology and into a unit where she worked hours that were a hardship on her family, of Plaintiff Gonzales' being forced to work, if at all at ENMMC, in the nursery and made to endure an emotionally disturbing environment, of Plaintiffs Netsch's decision to terminate her employment early, and of Plaintiff DeBaun's decision to leave ENMMC altogether, regardless of whether their families were able to find support elsewhere, are all facts which are in dispute and material to a constructive

---

baby dies on me or if--they are real delicate---... and it's just---and the reason that I decided was, when I was in the nursery, one of the babies got real cyanotic, lack of oxygen, and I was there by myself and I didn't know where the other nurse went, and I said, "If something like this happened, I don't want to be there," so---

discharge claim. The Court will not require Plaintiffs, who for 3 years complained to management of Defendant Kapoor's conduct and were driven from their chosen place of work, to remain unemployed or to not seek possible employment in the employer's other departments in order to satisfy the constructive discharge test. Plaintiffs' other employment may go to damages, but not to liability. For those four plaintiffs, their work at ENMMC outside of radiation oncology may satisfy their duty to mitigate damages, their duty to seek any reasonable option short of termination, and provide an offset if Defendants are found liable. But that work does not, in and of itself, mandate the granting of summary judgment on the constructive discharge claim.

Yet, whatever the extent of a plaintiff's duty to reasonably explore any option short of resignation, this duty can not stretch to encompass the 15 months that Ms. DeLosSantos worked in TCU, arguably with disagreeable hours, but with admittedly no discrimination. *See Smith*, 943 F.2d at 167. The injuries Plaintiff DeLosSantos may have suffered at the hands of defendants, including being forced to look for work elsewhere at ENMMC, while otherwise actionable do not give rise to a constructive discharge claim for Ms. DeLosSantos, who worked from May 1995 until August 1996 in TCU, and testified in a deposition that she experienced no discrimination in that unit during that time.

II.  The Remaining Motions

A.   The Eastern Defendants' Motion to Exclude the Testimony of Dr. T. Zane Reeves

Here the ENMMC Defendants, invoking Rules 702 and 403 and objecting under *Daubert*, seek to prevent the testimony of Plaintiffs' expert Dr. T. Zane Reeves, claiming that the proposed testimony is improper, unduly prejudicial, and should be excluded under the *Daubert* standards.

At the outset the Court must address an issue of procedural concern. Although ENMMC

14

Defendants devote 5 of their 12 page supporting memorandum to arguing that *Daubert* applies, they concede in their reply that *Daubert* does not apply, citing *Compton v. Subaru of America, Inc.*, 82 F.3d 1513 (10th Cir. 1996), *cert. denied*, _ U.S. _, 117 S.Ct. 611 (1996).  The Tenth Circuit issued *Compton* on April 30, 1996, and ENMMC Defendants filed their motion on January 15, 1998.  While ENMMC Defendants were not ethically obligated to mention *Compton* in their supporting memorandum, *see* Rule 16-303 NMRA 1998, the Court finds it probable that ENMMC Defendants' *Daubert* argument, under the circumstances, was no more than designed to harass Plaintiffs and was in violation of Fed. R. Civ. P. 11(b)(1).  Therefore, the Court will issue an order to show cause as to why it should not impose sanctions.  *See* Fed. R. Civ. P. 11(c)(1)(B).

Turning to the substantive matter of the motion, ENMMC Defendants agree that Dr. Reeves, a professor of human resources management at the University of New Mexico and the director of the university's School of Public Administration, is qualified to testify as an expert.  ENMMC Defendants contend, however, that Dr. Reeves' testimony is both improper and unduly prejudicial because it presents factual determinations and conclusions of law to the jury, usurping both the province of the jury and the role of the Court.  Dr. Reeves' preliminary report shows that he is prepared to offer the following opinions: that Defendants Treloar, Shafer, Chubb MacKeller, and Knoble were negligent in their duties as managers in failing to investigate Plaintiffs' complaints, that Defendant Kapoor's actions constituted a hostile work environment, that ENMMC Defendants were negligent in their duties because of their repeated failures to take corrective or disciplinary action against Defendant Kapoor and failed to protect Plaintiffs' employment rights, and that ENMMC Defendants themselves contributed to a hostile work environment, thereby causing the constructive discharge of Plaintiffs.

Rule 702, of course, sets forth the proper role of expert testimony at trial.  The rule states that

15

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact at issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702.

The central concern of Rule 702 is to assist the trier of fact in understanding the evidence or to determine a fact at issue. *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir. 1988) (en banc), *cert. denied*, 488 U.S. 1008 (1989). This requirement is met here. Despite ENMMC Defendants' efforts to paint the issues in this case as within common knowledge, the Court finds that a jury would benefit from hearing the testimony of an expert in the field of human resources management.

However, although an expert's testimony may embrace "an ultimate issue to be decided by the trier of fact," Fed. R. Civ. P. 704, *Specht* explains that a court should not allow an expert to instruct a jury on the law, *Specht*, 853 F.2d at 807, and that an expert may not provide "testimony that articulates the ultimate principles of law governing the deliberations of the jury." *Id.* at 808. Moreover, "[i]n no instance can a witness be permitted to define the law of the case." *Id.* at 810.

Despite its at times broad language, *Specht* emphasizes that the ruling of law it announces is narrow, and not intended to exclude testimony on all legal issues. *Id.* at 809. Indeed, "an expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function." *Id.* at 809-10. The Tenth Circuit issued more guidance on this issue four years after *Specht*.

The Tenth Circuit clarified *Specht* in *Zuchel v. City and County of Denver, Colorado*, 997 F.2d 730 (10th Cir. 1993). In that civil rights action alleging the use of excessive force, the trial court heard an expert in police training, Mr. Fyfe, testify that a shooting was caused by the absence of

16

training in the police department, and that Denver's police department was deliberately indifferent to instances of excessive use of force by its officers. *Id.* at 739, 740. In finding this testimony completely permissible, *id.* at 743, the *Zuchel* court clarified that critical to *Specht* was the factor that there the expert was an attorney whose area of expertise was constitutional law:

> "[t]here is a significant difference between an attorney who states his belief of what law should govern the case and any other expert witness." [*Specht*, 853 F.2d] at 808. Here, in contrast, Mr. Fyfe had a doctorate in criminal justice and was an expert in police training, tactics, and the use of deadly force. Courts generally allow experts in this area to state an opinion on whether the conduct at issue fell below accepted standards in the field of law enforcement.

*Zuchel*, 997 F.2d at 742 (citations omitted).

*Specht*, therefore, is only partially controlling in the case at bar.

A comparison of *Specht* and *Zuchel* shows that *Zuchel* is a much closer fit than *Specht*. As in *Zuchel*, the expert here is not an attorney, but a professor who is a recognized expert in his field. *See Zuchel*, 997 F.2d at 738. As in *Zuchel*, the expert here would testify that ENMMC Defendants' conduct was deficient compared to societal norms. As in *Zuchel*, Plaintiffs' expert is prepared to testify on causation issues.

Guided by *Specht* and *Zuchel* and provided it is otherwise admissible, the Court will allow the great bulk of Dr. Reeves' testimony, subject to minor changes. Because of the possibility of confusing the jury with the use of the term "negligence," the Court will not allow Dr. Reeves to use that term in explaining his opinion. Dr. Reeves may fully opine, however, that ENMMC Defendants both should have investigated Plaintiffs' allegations and were remiss in not disciplining Defendant Kapoor or in not taking corrective action despite the warnings of various employees. Moreover, Dr. Reeves may conclude that Defendant Kapoor's and ENMMC Defendants' actions contributed to the

creation of a hostile environment and caused the constructive discharge of Plaintiffs, with the caveat that the Court may instruct the jury on the elements of constructive discharge at an appropriate point in Dr. Reeves' testimony.  *See Zuchel*, 997 F.2d at 743.  Finally, Dr. Reeves may testify that ENMMC Defendants failed to protect the employment rights of Plaintiffs.  Should ENMMC Defendants invite their own expert to testify, subject to proper qualification the Court will follow the same parameters in allowing that testimony.

ENMMC Defendants' Rule 403 argument is without merit.  The plain language of Rule 403 allows the exclusion of testimony whose "probative value is substantially outweighed by the danger of unfair prejudice."  Fed. R. Evid. 403.  By its very definition this rule requires an evaluation of probative value, which in the case of Dr. Reeves' testimony is quite high.  Moreover, simply because a party could be harmed by testimony is not a sufficient basis for excluding testimony, for all testimony ultimately is designed to present a point of view at trial.  ENMMC Defendants do not come close to showing that any prejudice here would be unfair, or that it would substantially outweigh the significant probative value of Dr. Reeves' testimony.

B.  Defendant Kapoor's Motion to Dismiss or in the Alternative to Strike Certain of Plaintiffs' Witnesses

In this motion having at its roots a discovery tiff and where Defendant Kapoor pleads in extremes, Defendant Kapoor complains that Plaintiffs have not disclosed, in derogation of discovery rules, whether they will offer the testimony of certain witnesses at trial and a summary of that testimony.  Plaintiffs respond that at least one witness, Ms. Paula Baker, is known to Defendant Kapoor because he disclosed her name in his initial disclosure, and his counsel attended her deposition, and that another potential witness, Ms. Jeanie Mealand, has had a personal relationship

with Defendant Kapoor. Plaintiffs also contend that Defendants Kapoor and ENMMC Defendants are in the best position to identify from a list of possible witnesses which are former patients or former employees. The Court agrees with both sides, and will order cooperation which, in the spirit of the discovery rules, should have been forthcoming from all litigants.

**THEREFORE,**

**IT IS HEREBY ORDERED,** that Defendant Kapoor, M.D.'s Motion for Summary Judgment, filed May 5, 1997 **[Doc. No. 39]**, ENMMC Defendants' Motion for Partial Summary Judgment on Plaintiffs' Negligence and Prima Facie Tort Claims, filed December 3, 1997 **[Doc. No. 90]**, ENMMC Defendants' Motion for Partial Summary Judgment on Plaintiffs' Section 1983 and Section 1985 Claims, filed December 16, 1997 **[Doc. No. 104]**, Eastern Defendants' Motion to Exclude Testimony of Dr. T. Zane Reeves, filed January 16, 1998 **[Doc. No. 146]**, Defendant Kapoor's Motion to Dismiss or in the Alternative to Strike Certain of Plaintiffs' Witnesses, filed June 5, 1998 **[Doc. No. 189]**, ENMMC Defendants' Motion for Partial Summary Judgment on Back Pay, Front Pay and Prejudgment Interest for Plaintiffs Nieto, DeLosSantos, Netsch, DeBaun and Gonzales, filed August 26, 1998 **[Doc. No. 210]**, and ENMMC Defendants' Motion for Partial Summary Judgment on Plaintiffs' § 1983 Claims (No Action Under Color of Law by Dr. Kapoor), filed August 31, 1998 **[Doc. No. 215]** be, and hereby are, **denied**.

**IT IS FURTHER ORDERED THAT** Plaintiff Betty DeLosSantos' claim of constructive discharge be, and hereby is, **dismissed**.

**IT IS FURTHER ORDERED THAT** Defendant Kapoor and ENMMC Defendants disclose to Plaintiffs, within ten days of the filing of this order, the last known location of the following potential witnesses, including addresses and telephone numbers, and an indication of whether these

19

persons are employees, patients, former employees or former patients. Plaintiffs shall, within 30 days from Defendants' disclosure, state to Defendants in writing whether they will offer any of these persons as witnesses and if so provide a summary of the expected testimony:

> Sam Pettit, Shelda Strahan, Richard Garcia, Virginia Torrez, Susan Cox, Kay Corn, Betty Barrares, Jan Jordan, Joe Barela, Geneva Bauer, Jaunell McNair, Antonio Rand, Miquella Schepcoff, Virginia Whalen, Christine Spears, Sally Anderson, Sandra Davis, Mary Ramirez, Elizabeth Stevens, Alice Lasolla, Marjorita Anderson, Hans R. Poethig, Darlene M. Ronne, and Magdiel Martinez.

**IT IS FURTHER ORDERED THAT** the parties are directed to show cause on **Wednesday, October 14, 1998, at 2:00 P.M., Courtroom 13-West, Dennis Chavez Federal Building, Albuquerque, New Mexico**, why sanctions should not be imposed on ENMMC Defendants for the reasons set out in this memorandum opinion.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

September 17, 1998

Counsel for Plaintiffs

Randy K. Clark , Esq.
Kathryn A. Hammel , Esq.
Tandy L. Hunt , Esq.

Counsel for Defendant Kapoor

Gerald G. Dixon , Esq.
John Michael Roberts , Esq.
Mark D. Jarmie , Esq.


Counsel for ENMMC Defendants
Jeffrey L. Lowry , Esq.
Thomas L. Stahl , Esq.
Charles J. Vigil , Esq.
W. Robert Lasater Jr., Esq.