## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ANNA NIETO, BETTY DELOSSANTOS,
PATRICK SANCHEZ, SALLY NETSCH,
PHYLLIS DEBAUN, and MARY GONZALES,

                Plaintiffs,

vs.                                    No. CIV 96-1225 MV/JHG

QUDRAT KAPOOR,

                Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's Motion to Tax Costs **[Doc. No. 374]**, filed July 17, 2000 and Plaintiff's Motion for Costs and Award Expenses Including Reasonable Attorneys' Fees **[Doc. No. 375]**, filed July 17, 2000. The Court, having considered the motions, response, reply and otherwise being fully informed, finds that the motions are well taken and will be **granted in part.**

## BACKGROUND

This is a hostile environment case against Dr. Qudrat Kapoor, the Medical Director of the Radiation Oncology Department of the Eastern New Mexico Medical Center ("ENMMC"), brought by six former employees of ENMMC who worked with Dr. Kapoor. Plaintiffs initially named ENMMC and a number of ENMMC supervisors as defendants (collectively "ENNMC Defendants"). The ENMMC Defendants have settled with Plaintiffs and have been dismissed.

1

Therefore, Dr. Kapoor is the sole remaining Defendant. The Court has previously dismissed Plaintiffs' negligence and prima facie tort claims and their conspiracy claims under 42 U.S.C. § 1985, and Plaintiffs withdrew their contract claims. Accordingly, remaining are three causes of action against Dr. Kapoor: (1) § 1983 claims for creating racially and/or sexually hostile work environments in violation of the Equal Protection Clause; (2) § 1983 claims for retaliating against Plaintiffs after they complained about Dr. Kapoor's conduct in violation of the First Amendment; and (3) tort claims for intentional infliction of emotional distress. After a bench trial, this Court found that five of the six plaintiffs (all but Anna Nieto) were subjected to a racially and/or sexually hostile work environment in violation of the Equal Protection Clause; three of the six plaintiffs were retaliated against for exercising their First Amendment right to freedom of speech; and that Dr. Kapoor intentionally inflicted emotional distress on five of the six plaintiffs (all but Anna Nieto).

## ANALYSIS

### I. Motion To Tax Costs

Plaintiffs seek costs in the amount of $19,620.38 under D.N.M.L.R. CIV 54.2, 42 U.S.C. § 1988, 28 U.S.C. § 1920, and 28 U.S.C. § 1927. "Costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." FED. R. CIV. P. 54(d)(1). The Tenth Circuit has held that Rule 54(d) creates a presumption that the prevailing party shall recover costs. *See Klein v. Grynberg*, 44 F. 3d 1497, 1506 (10th Cir. 1995). The district court "must provide a valid reason for not awarding costs to a prevailing party." *Cantrell v. International Bhd. of Elec. Workers*, 69 F. 3d 456, 459 (10th Cir. 1995). The scope of taxable

costs is defined in 28 U. S. C. § 1920 and D.N.M L.R Civ. 54.  The prevailing party has the burden of proving that the expenses sought to be taxed fall within the applicable categories.  *See, e. g., Mares v. Credit Bureau of Raton*, 801 F. 2d 1197, 1208 (10th Cir. 1986); *Green Construction Co. v. Kansas Power and Light Co.*, 153 F. R. D. 670, 675 (D.Kan. 1994).  If the prevailing party carries this burden, a presumption arises in favor of taxing those costs.  *See United States Industries, Inc. v. Touche Ross & Co.*, 854 F. 2d 1223, 1245 (10th Cir. 1988). Defendants do not dispute that costs generally should be awarded to plaintiffs, as they were clearly the prevailing party.  However, defendant challenges several specific costs claimed by plaintiffs as unrecoverable.

### A.  Deposition Expenses

Defendant challenges the costs for the depositions of Joseph Hantulla, Richard Garcia, Magdiel Martinez, Susan Cox, Shelda Strayhan, Virginia Torrez, Sam Pettit, Janice Jordan, Orson Treloar and Keith MacKellar.  Although defendant admits that some of these persons appeared as witnesses at trial, he states that none of the deposition transcripts were reasonably necessary to the litigation, as they were not admitted at trial or considered by the Court pursuant to a motion for summary judgment.

However, costs of deposition transcripts may be taxed if the Court determines that the transcripts were reasonably necessary to the litigation.  D.N.M.L.R. 54.2(b)(2)(C).  The Court determines that the transcripts were reasonably necessary to the litigation.  Magdiel Martinez, Richard Garcia, Orson Trelor, Keith MacKeller, Susan Cox and Sam Pettit were all witnesses listed on defendant's exhibit list.   In order for plaintiffs to properly prepare for trial, they had to

have deposed these witnesses and ordered the transcript of their depositions for review.  Janice

Jordan, Shelda Strayhan and Virginia Torrez were plaintiffs' witnesses who testified at trial.  In

order to prepare for their examinations, the Court finds it was reasonably necessary to the

litigation for plaintiffs to have ordered their deposition transcripts.  Joseph Hantulla is

Dr. Kapoor's accountant.  His deposition was considered in this Court's Order to Show Cause

Hearing regarding Dr. Kapoor's failure to disclose his financial records.  Therefore, the Court

finds it was necessary to the litigation. Therefore, the Court will allow the depositions and

transcripts of those depositions to be taxed as costs.


### B.  Transcripts of Court Proceedings

Defendant next contends that transcripts of court proceedings are not recoverable under

D.N.M.L.R. 54.  Plaintiff contends that transcripts are recoverable.  The rule states that "the cost

of an original transcript of a court proceeding is taxable when requested by a party and authorized

the Court before the transcription."  D.N.M.L.R. 54.2(a).  There is nothing on the record to

indicate that the transcripts of the hearings were requested by a party and authorized by the

Court.  Therefore, this Court cannot authorize the transcripts under the local rule.

This is the first of several items objected to by defendant that although is not compensable

under the local rule, is compensable under 28 U.S.C. §1920.  Defendant does not cite Section

1920 at all, nor does he address its provisions for allowing costs.  Defendant should take note for

future litigation that Section 1920 covers taxable costs as well as the local rule.  That being said,

the Court finds that the transcripts are compensable under 28 U.S.C. § 1920.  Section 1920(2)

provides that "[f]ees of the court reporter for all or any part of the stenographic transcript

4

necessarily obtained for use in the case" may be taxed as costs.  The Court finds that the transcripts of the hearings were necessarily obtained for use in the case.  This was a highly fact-intensive case that required counsel to be intimately familiar with the testimony of the witnesses in order to prepare for both cross examination and examination of other witnesses.  Therefore, the Court finds that the transcripts of the court hearings were necessarily obtained for use in the case.

### C.  Printing and Copying Costs

Defendant objects to printing and copying costs, stating that costs for copying are only taxable when the exhibit is admitted into evidence.  While the local rule only allows for copying costs when the exhibit is admitted into evidence, *see* D.N.M.L.R. 54.2(e), Section 1920(4) allows for copying costs necessarily obtained for use in the case.  Plaintiffs submitted a receipt for $158.76 for copies made on January 28, 2000, approximately three weeks before trial.  However, plaintiffs have not submitted any other receipts for their copying costs.  While defendant's objection is not well taken, plaintiff has not presented any evidence or argument to this Court as to why 9,742 copies at $.25 per page was necessary.  The Court first takes judicial notice that $.25 per page is an excessive cost for copying.  A usual cost is approximately $.10 per page.  Therefore, the Court will only award  $974.20 as the cost for copies made.

### D.  Accounting Group

Defendant objects to the fees paid to the Accounting Group and attorney Donald Fenstermacher.  Plaintiffs agree that expert witness fees are not taxable under 28 U.S.C. § 1920 or 42 U.S.C § 1988.  However, plaintiffs contend that the Court should make Dr. Kapoor

reimburse them for the $1,148.95 paid to the Accounting Group because this expense was necessitated by Defendant's recalcitrance in complying with the Court's discovery orders about his financial records.  Plaintiffs state that they had to incur these expenses at the last minute in order to make sense out of the financial records that Dr. Kapoor's accountant did finally produce. Plaintiffs similarly argue that the Court ought to award $2,520.36 of the fees and expenses paid to attorney Donald Fenstermacher, whose last minute action obtained a lifting of the bankruptcy stay so that this trial could go forward.  Plaintiffs argue that the expenses are recoverable under 28 U.S.C. § 1927 or pursuant to the "inherent powers" of this Court.

The Court will award the fees as requested by the plaintiffs under 28 U.S.C. § 1927. Section 1927 provides, "Any attorney or other person ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys fees reasonably incurred because of such conduct."  In *Braley v. Campbell*, 832 F. 2d 1504, 1512 (10th Cir. 1987), the Tenth Circuit defined vexatious conduct under 28 U. S. C. § 1927 as conduct that, viewed objectively, manifests either intentional or reckless disregard of the person's duties to the court.  The Court finds that Dr. Kapoor's conduct in failing to turn over his financial records in violation of this Court's order manifested reckless disregard of his duties to this Court.  Therefore, the Court will award the fees incurred to the Accounting Group and Donald Fenstermacher under 28 U.S.C. § 1927.

While plaintiffs did not submit Mr. Fenstermacher's time records with their motion, they did submit it with their response.  Defendant has not filed a supplemental response responding to Mr. Fenstermacher's time nor has defendant objected to plaintiffs' counsel filing Mr. Fenstermacher's time records with the response.  Therefore, the Court will consider

Mr. Fenstermacher's time records.

The Court finds that Mr. Fenstermacher's time was reasonably spent in lifting the stay in Bankruptcy Court so that these proceedings could go forward.  His time records are sufficiently detailed; the time expended on the task is reasonable (totaling only 13.5 hours and his rate at $165 is reasonable for the work he performed.  However, the Court notes that the copying charges on Mr. Fenstermacher's bill are excessive, and that $0.10 is reasonable per copy. Therefore, his bill will be reduced by $8.80.

### E.  Witness Expenses

Defendant finally objects to witness expenses incurred by the plaintiffs.  As plaintiff points out, each of the plaintiffs was a witness for the other plaintiffs.  Therefore, they are entitled to witness fees under D.N.M.L.R. 54(c).  Even if this Court were not to find that plaintiffs were not entitled to witness fees under the local rule, the Court will still award these costs as litigation expenses under 42 U.S.C. § 1988.  "While only those items listed under Section 1920 may be awarded as costs, other out-of-pocket expenses incurred during litigation may be awarded as attorneys' fees under section 1988 if (1) the expenses are not absorbed as part of law firm overhead, but are normally billed to a private client; and (2) the expenses are reasonable." *Jane L. v. H. Bangerter*, 61 F.3d 1505, 1517 (10th Cir. 1995) (citation omitted); *see also Clay v. Unified School Dist. No. 233, Johnson County*, 157 F.3d 1243, 1257 (10th Cir. 1998) ("Reasonable expenses incurred in representing a client in a civil rights case should be included in the attorneys' fee award if such expenses are usually billed in addition to the attorney's hourly rate").  Such items may include reasonable travel expenses, telephone charges, paralegal and investigatory

7

work, and other out of pocket costs not normally absorbed as part of a law firm's overhead.  *See Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990) (attorney's travel expenses normally billed to a private client); *Ramos v. Lamm*, 713 F.2d 546, 559 (10th Cir. 1983) (reasonable expert fees, and long-distance telephone charges recoverable under 42 U.S.C. § 1988 if such expenses are usually charged separately in the area); *Heiar v. Crawford County*, 746 F.2d 1190, 1203-04 (7th Cir. 1984) (paralegal work compensable).  The Court finds that hotel, airfare and mileage expenses are normally billed in addition to attorneys' fees.  *See Sussman v. Patterson*, 108 F.3d 1206, 1213 (10th Cir. 1997).  Therefore, these expenses are awarded in full.

The total costs awarded to plaintiffs are $18,160.28.

## II.  Motion for Reasonable Attorneys' Fees

To qualify for an attorneys' fee award under 42 U.S.C. § 1988, a plaintiff must be a "prevailing party."  The Supreme Court stated that a plaintiff prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).  Parties may be considered prevailing parties for the purpose of attorneys' fees "if they succeed on any significant issue in litigation which achieves some benefit the parties sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)).  There is no dispute that plaintiffs were a prevailing party.  As prevailing parties the plaintiffs are entitled to a reasonable attorneys' fee.  *See* 42 U. S. C. § 1988(b); *Hensley*, 461 U. S. at 433.  When examining an attorneys' fee claim, the district court should examine the hours spent on each task to determine the reasonableness of the hours

reported.  *See Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 538, 542 (10th Cir. 2000)

(citing *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir.1983) (reviewing award of attorneys' fees

under 42 U.S.C. § 1988)).  The product of this calculation is the lodestar, which may be equitably

tailored to the facts of the case.  *See Blum v. Stenson*, 465 U. S. 886, 888 (1984).  The lodestar

provides an "objective basis on which to make an initial estimate of the value of a lawyer's

services."  *Hensley*, 461 U.S. at 433.  The district court may either accept the lodestar as the

reasonable amount to award the prevailing party or the court may adjust the lodestar upward or

downward, depending on the circumstances of the case.  *See Louisiana Power & Light Co., v.

Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (citation omitted).  "There is no precise rule or

formula for making these determinations.  The district court may attempt to identify specific hours

that should be eliminated, or it may simply reduce the award to account for their limited success.

The court necessarily has discretion in making this equitable judgment."  *Hensley*, 461 U.S. at

436-37.


### A.  Rate to Be Awarded

In determining a reasonable rate, the Tenth Circuit held in *Ramos v. Lamm*, 713 F.2d 546

(1983), that for an attorney seeking fees under 42 U.S.C.A. § 1988, the reasonable fee rate is that

charged by attorneys having similar expertise in the community in which the court sits unless

unusual circumstances are present.  *See id.*, 713 F.2d at 555.  "'[T]he court should establish, from

the information provided to it and from its own analysis of the level of performance and skills of

each lawyer whose work is to be compensated, a billing rate for each lawyer based upon the norm

for comparable private firm lawyers in the area in which the court sits calculated as of the time the

court awards fees.'" *Sussman*, 108 F.3d at 1211 (citing *Ramos*, 713 F.2d at 555). Thus, although Mr. Clark and Mr. Hunt are from the smaller community of Roswell, the rates appropriate for Santa Fe and Albuquerque, where this Court usually sits, control. Contrary to plaintiffs' assertions, it is the fee applicant who bears the burden of proving he is entitled to an award, of documenting the appropriate hours expended, and of justifying the requested hourly rate. *Id.*; *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) (fee applicant must "prove and establish the reasonableness of each dollar, each hour, above zero"); *see also Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d at 324 (fee applicant must produce sufficient documentation to sustain its burden).

Defendants generally argue that plaintiffs' counsel should be awarded fees that correspond with the State of New Mexico's billing guidelines for contract attorneys. The guidelines state that Risk Management defense attorneys should be paid a maximum of $115 per hour. The Court agrees with plaintiffs' counsel that these guidelines are not an appropriate yardstick by which to measure the appropriate rates to be awarded counsel in this case. The Supreme Court has consistently stated that market rates of private counsel are the appropriate rates to be considered in awarding attorneys' fees. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984); *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283 (1989). In *Malloy v. Monahan*, 73 F.3d 1012 (10th Cir. 1996), the court articulated the reason why plaintiffs should not be awarded the same rate as government contract attorneys:

> Plaintiffs' and defendants' civil rights work, however, are markedly dissimilar. Attorneys in defendants' civil rights cases are typically paid regardless of their success in a case and receive payment on a shorter billing cycle. Moreover, defendants' attorneys are sometimes guaranteed a certain amount of work from insurance pools.

*Id.* at 1018-19; *see also Northington v. Marin*, 102 F.3d 1564, 1571 (10th Cir. 1996) ("We agree

with the [district] court's rejection of Marin's argument that the rate charged by attorneys

defending penal institutions in civil rights cases was the appropriate rate."); *Sussman v. Patterson*,

108 F.3d at 1212.  In contrast, as Mr. Davis states in his affidavit, plaintiffs' counsel run the risk

of not receiving any payment at all if they are not successful.  This Court follows the Supreme

Court and Tenth Circuit precedent in determining that market rates are more appropriate in

setting plaintiffs' counsel's rates.  Additionally, the market rate should be assessed "at the time the

fee is being established ... rather than those in effect at the time the services were performed."

*Sussman*, 108 F.3d at 1212 (quoting *Ramos*, 713 F.2d at 555).

 The Court finds that the rates requested by plaintiffs' counsel are reasonable.  Randy Clark

requested $150 per hour.  Defendant argues that Mr. Clark was a new lawyer when he began this

case and that his rate should be between $80 and $95 per hour, which is more consistent with the

rates in Roswell.  Defendant cites no support for this rate.  Plaintiffs, on the other hand, submit

Mr. Clark's affidavit and Mr. Davis' affidavit supporting such an award.  As this Court has

already stated, plaintiffs' counsel in this case should be awarded the rates for the communities of

Santa Fe and Albuquerque, where this Court usually sits.  Mr. Clark should also be awarded the

current market rate, rather than the rate at the time at which the litigation began.  Mr. Philip

Davis, an experienced civil rights attorney in this state, who also has significant expertise in

attorneys' fees litigation, states that Mr. Clark's rate, while at the high end of a range of $135 to

$150 for those of his skill level, is reasonable.  The rate is Mr. Clark's standard hourly rate as set

out in his affidavit.  Mr. Clark was lead counsel in the motion, discovery and trial phases of the

case for his three clients.  He won an extraordinary victory in this complicated case that lasted

approximately five years.  He has significant experience now dedicated to plaintiffs' civil rights

cases and section 1983 litigation on behalf of plaintiffs.  This Court observed Mr. Clark's performance during the trial and finds that his demonstrated knowledge, skill and preparedness warrant a fee in the upper end of the range.

The Court also finds that Mr. Tandy Hunt's requested rate of $250 per hour is reasonable. Mr. Hunt has been practicing in New Mexico for over thirty years.  Most of his experience has been in civil trial practice.  His usual hourly rate is $250 per hour for legal services provided on an hourly basis.  He was lead counsel in the discovery and trial phases for his three clients, with the assistance of Kathryn Hammel. The Court recognizes that he, like Mr. Clark, won an extraordinary victory in this complicated case that lasted approximately five years.  Former Justice Wilson stated in his affidavit that the rate requested by Mr. Hunt is fair and reasonable.   Mr. Wilson is qualified to attest to the reasonable market rate for attorneys' fees.  He bases his judgment on Mr. Hunt's standard hourly rate, his personal knowledge of Mr. Hunt's background, skill and experience and on the current prevailing hourly rates.  Mr. Wilson himself has significant civil trial experience and was a Former Justice on the New Mexico Supreme Court.   In support of Mr. Hunt's requested fee, Mr. Wilson states that "a rate that is less than what has been requested by Mr. Hunt would create additional difficulty for clients with worthy civil rights claims to obtain and retain skilled counsel."  Mr. Wilson stated that the range of attorneys' fees for experienced skilled trial lawyers was $200 to $350.  $250 per hour is well within the range of attorneys' fees with the experience that Mr. Hunt has.  As with Mr. Clark, this Court has had the opportunity to observe Mr. Hunt's extraordinary trial skills firsthand.  This Court finds that all of the factors cited above warrant a fee award in the amount of $250 per hour.

Finally, this Court finds that an award of $150 per hour for Kathryn Hammel is reasonable.

Ms. Hammel graduated from law school in 1991.  She has had significant experience in civil trial practice, with an almost exclusive focus on civil rights cases.  Her regular hourly rate is $150 per hour.  This has been her rate since about 1997.  In 1994 and 1996 she received a fee award in the amount of $125 per hour.  Defendants state that this rate is appropriate.  However, as the Tenth Circuit stated, a rate set three years before the district court must make a determination of an appropriate fee award is not dispositive. *See Sussman*, 108 F.3d at 1212.  In 1997, in a settlement, she received her regular hourly rate of $150 per hour.  In 1998, although her regular rate was $150 per hour, she requested only $125 per hour in light of the secondary role she played in that case.  In this case, Ms. Hammel did not play a secondary role, although she was co-counsel with Mr. Hunt.  Ms. Hammel played a significant part of a team that won an extraordinary victory in this case for her clients.  As defendant points out in his response, Ms. Hammel "engaged in joint representation of the Plaintiffs," as she presented closing argument and wrote motions responses for all the plaintiffs.  As with Mr. Clark and Mr. Hunt, this Court had the opportunity to observe Ms. Hammel's performance during the trial and finds that her demonstrated knowledge, skill and preparedness warrant a fee of $150 per hour.

### B.  Hours Reasonably Expended

The other factor in a lodestar calculation is the appropriate number of hours reasonably expended.  "When ... the applicant for a fee has carried his burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be the reasonable fee" to which counsel is entitled.  *Blum v. Stetson*, 465 U.S. 886, 897 (1984).  In determining what amount of time is reasonable, the district court does not have to justify every hour allowed

in awarding attorneys' fees. *See Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996).

"[W]hat is reasonable in a particular case can depend upon factors such as the complexity of the

case, the number of reasonable strategies pursued, and the responses necessitated by the

maneuvering of the other side." *Ramos*, 713 F.2d at 554. To satisfy their burden, "[p]laintiff's

counsel, of course, is not required to record in great detail how each minute of his time was

expended, but at least counsel should identify the general subject matter of his time expenditure."

*Hensley*, 461 U.S. at 437 n.12. "[T]he party who seeks payment must keep records in sufficient

detail that a neutral judge can make a fair evaluation of the time expended [and] the nature and

need for the service . . . ." *Id.* at 441 (Burger, C.J., concurring). If a party's attorney fails to

document his or her hours adequately, the district court may reduce the award. *Id.* at 434;

*Kellstrom*, 50 F.3d at 324 (court may reduce number of hours awarded if documentation is vague

or incomplete). "The prevailing party must make a good-faith effort to exclude from a fee request

hours that are excessive, redundant, or otherwise unnecessary." *Jane L. v. Bangerter*, 61 F.3d

1505, 1510 (10th Cir. 1995) (quoting *Hensley*, 461 U.S. at 434) *rev'd on other grounds*, *Leavitt

v. Jane L.*, 518 U.S. 137 (1996).

Relevant to this Court's consideration of whether the attorneys in this case billed for a

reasonable amount of time, the Court notes the following as background. In this case, all three

attorneys submitted contemporaneous and detailed records of their hours spent on the case,

indicating with specificity each activity completed and the time spent in quarters and tenths of an

hour. For the most part, each day's record is broken down by activity so that this Court may

adequately determine how much time was spent on each task, although a small number of records

aggregate tasks into one time increment. For those entries, however, the Court finds that the

14

entries are sufficiently specific for this Court to evaluate the reasonable of the time spent by the attorneys.  The Court notes, and appreciates, that for the most part, when counsel bill for "research," they specify the subject of the research (i.e. "qualified immunity").   Reviewing the billing records as a whole, the Court further notes that the bulk of counsel's charges are for necessary and limited tasks.  They bill for time spent researching the legal issues; preparing motions, briefs, letters and responses; strategizing with one another; consulting with clients; investigating the case and gathering evidence to support their claims; reviewing that evidence and evaluating its probative value; attending court hearings and conferences; taking depositions; preparing witnesses; traveling; consulting with experts and other appropriate attorney tasks.  The time spent on this case spans from May 1996 until April 2000.  The time records submitted by plaintiffs' counsel show that they worked on this case diligently and consistently for the past four years.  There are entries virtually every month.  The records indicate that most months plaintiffs' counsel did a considerable amount of work on this case.

The Court must first state that generally, defendant's objections to plaintiffs' counsel's time records are woefully inadequate.  Defendant cites very little case law to support his various positions, and cites no Tenth Circuit law.  Defendant also fails to cite controlling Tenth Circuit precedent that is directly contrary to his position.  Defendant, for most of his objections, fails to point to specific charges which he feels are unreasonable.  He makes excuses that "it is not practical" to address each incident and asks this Court to arbitrarily reduce plaintiffs' counsel's time because certain entries are unreasonable on their face.  He further fails to articulate with any specificity or logic why this Court should find that certain charges are unreasonable.  At times he takes the unreasonable position that certain categories of expenses should be wholly disallowed,

without any citation to authority.  The Court nonetheless forges on.


    1.  Conferences

    Defendant objects to certain categories of expenses.  They first object to conferences

between attorneys.  The only evidence defendant cites to support its contention that conferences

between attorneys should not be allowed is the Risk Management Guidelines.  This Court has

already rejected that manual as an appropriate guide to govern attorneys' fees in this case.

Moreover, plaintiffs' counsel represented six plaintiffs.  The fact that they need to confer to

discuss their respective clients is not at all unreasonable.  In fact, it is conscientious.  Additionally,

defendant asserts that it is difficult to determine how much of plaintiffs' counsel's time was spent

in conferences because the billing style of plaintiffs' counsel "aggregates a number of tasks into a

single billing increment."  This is only true of some of the entries during the first year of plaintiffs'

records.  For the next three years, however, plaintiffs' counsel specifically break down their time

records by task and attorney.  Their records are not aggregated as defendant contends.  Even the

records in the first year state with sufficient specificity the tasks performed.  They are also

consistently broken down by attorney.  Defendant's argument is without merit.

    The Court finds that plaintiffs' conferences were reasonable. Plaintiffs' counsel

represented six plaintiffs.  The legal issues and factual circumstances in this case were complex

and required plaintiffs' counsel to coordinate strategies.  Additionally, the Court notes that the

defendant was particularly obstreperous during the course of the trial as to require additional

collaboration and strategization by plaintiffs' counsel. *See City of Riverside v. Rivera*, 477 U.S.

561, 580 n.11 (1986) ("the defendant cannot litigate tenaciously and then be heard to complain

about the time spent by the plaintiff in response"); *Ramos*, 713 F.2d at 554 (one of the factors a court should consider is the response necessitated by the maneuvering on the other side). Defendant states generally that conferences between attorneys should not be allowed. However, this is contrary to what the Tenth Circuit has stated: "[t]ime spent by two attorneys on the same general task is not ... per se duplicative. Careful preparation often requires collaboration and rehearsal...." *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062,1077 (10th Cir. 1998) (citing *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1998)). Further, defendant does not identify with specificity which hours he believes are excessive and redundant. Defendant cannot rest its inability to object with specificity on plaintiffs' counsel's billing records. As the Court found above, the billings records are sufficiently detailed. Therefore, while duplicate hours can properly be deleted, it is the defendant's burden to review the records and identify, with specificity, which hours submitted are excessive and redundant. *See Sheets v. Salt Lake County*, 45 F.3d 1383, 1391 (10th Cir. 1995)) (refusing to disturb district court's attorneys' fees award when defendants asserted that requested fees were duplicative and exorbitant without substantiating their claims). The Court will allow conferences between the attorneys as reasonable attorneys' fees and finds that no reduction is warranted.

### 2. Travel Time

Defendants next argue that either travel time should not be permitted, or that, if it is, it should be reduced because plaintiffs' counsel did not exercise reasonable discretion in choosing a mode of travel. The Court declines to accept defendant's first suggestion. Travel is an appropriate part of a reasonable attorneys' fee. *See Brown v. Gray*, 227 F.3d 1278, 1297 (10th

Cir. 2000); *Lockard*, 162 F.2d at 1076-77.  Therefore, this Court finds that some award for

plaintiffs' counsel's travel time is appropriate.  While plaintiffs' counsel in their reply stated that

they have agreed to only charge a half rate for their travel time, the Court nonetheless finds that

defendant's objection to the mode of travel for one of plaintiffs' counsel's trips is well taken.

Defendant objects to 17 hours being awarded to Mr. Clark for the time it took for him to

drive to a deposition in Temple, Texas; 12.5 hours for Mr. Hunt for a similar trip; and 42 hours

for Mr. Clark's drive to Houston for a deposition.  Plaintiffs' counsel do not explain why driving

was necessary or would have been less expensive than air travel.  As for the trips to Temple,

Texas, the Court finds that while at first blush the time appears excessive, no time would have

been saved had plaintiffs' counsel flown to their destination.  The Court takes judicial notice that

Roswell is approximately 200 miles from either Albuquerque or El Paso, the closest major

airports.  Therefore, even if plaintiffs' counsel had flown, travel time would have included

approximately seven hours simply getting to and from the airport in New Mexico.  The flight

would have been at least three hours round trip (a very conservative estimate and assuming the

flight had no layovers); and travel to and from Temple and Austin, the closest airport, is another

two hours round trip.  That totals twelve hours.  Therefore, the Court finds that the trips to

Temple, Texas were reasonable in their chosen mode of transportation.  Further, plaintiffs'

counsel exercised reasonable billing judgment in charging only half of their awarded rate for travel

time.

However, the same cannot be said of Mr. Clark's 42-hour trip to Houston.  This was

excessive and Mr. Clark should have exercised reasonable billing judgment and flown to Houston.

Considering the amount of time it would have him to fly, the Court finds that 15 hours for Mr.

Clark's trip is reasonable.  This is approximately the amount of time billed by Mr. Clark in

December 1997 for a trip to Houston when he flew.


    3.  Secretarial Tasks

       Defendant next contests plaintiffs' counsel's request for "secretarial tasks."  Defendant

asserts that these tasks should not be billed at all, or if they are, that they should be billed at a

dramatically reduced rate.  This is another instance where the defendant has utterly failed to point

to any specific entries that he finds objectionable, and has failed to cite any authority for his

position.  In this case, plaintiff has also failed to cite any authority to justify why this Court should

award compensation for secretarial tasks such as faxing, copying and placing conference calls.

The Supreme Court has stated that a "reasonable attorney's fee" may encompass separate charges

for secretarial services.  *See Missouri v. Jenkins*, 491 U.S. 274, 287 n. 9 (1989) ("The safeguard

against the billing at a profit of secretarial services ... is the discipline of the market." (emphasis

added)).  Such tasks are compensable if it is customary in the legal market to bill for such tasks.

*See id.* at 288.  Generally, however, "purely clerical or secretarial tasks should not be billed at a

paralegal rate, regardless of who performs them."  *Id.* at 288 n. 10.  Plaintiffs have not produced

any evidence that these tasks are customarily billed separately or that they are not normally

absorbed in the firm's overhead.  Therefore, the Court finds that time spent copying, faxing and

initiating conference calls may not be billed.

       Despite defendant's utter failure to specifically identify those charges which he finds

objectionable, upon the Court's own review of the billing records, the Court has discovered that

Mr. Clark has billed at his full rate of $150 for some administrative tasks.  The entries are not

many, however, and virtually cease once Ms. Allen begins to bill for her time.  Most of the entries

where Mr. Clark billed for administrative tasks are aggregated with other tasks, so the Court

cannot determine exactly how much time Mr. Clark spent doing administrative tasks.  Therefore,

ten of the hours for which Mr. Clark billed will not be allowed.  Additionally, there are some tasks

that are not aggregated and which the Court will not allow.  On March 4, 1998, he billed 0.5

hours for packaging exhibits; on November 22, 1999, he billed two hours for downloading

documents; on November 29, 1999 he billed 0.2 hours for faxing a letter; on December 15, 1999,

he billed 1.5 hours for administrative tasks; and on December 22, 1999, he billed 0.2 hours for

sending a fax.  On February 10, 2000, Ms. Hammel inappropriately billed 0.6 hours for obtaining

a transcript and faxing documents.  This time, which totals 5 hours, is not allowed.  Additionally,

on January 9, 1998, Mr. Clark billed seven hours for hand delivering discovery.  He should have

used a courier for this service.  Therefore the Court will not allow this seven hours to be billed at

all.  There are several entries for Mr. Clark where he charged for "receiving" documents.  This is

an inappropriate charge.  The charges are not many, but the Court finds that they are

unacceptable.  Therefore, Mr. Clark's bill will be reduced by another three hours.

     Finally, Ms. Allen has also billed for several tasks that are secretarial or administrative.

She has billed for tasks such as faxing, "packaging," copying and placing conference calls.  These

tasks are not appropriately billed separately and should be absorbed as part of the firm's overhead.

Again, the tasks are not many, but there are some.  Therefore, the Court will reduce her bill by ten

hours.

### 4. Communications with Wayne Stockberger

Defendants object to the time plaintiffs' counsel spent speaking to Mr. Stockberger, a Hospital defendant management official, because defendant believes that such communication was improper. Defendant's motion for sanctions on this issue was never ruled on because Eastern New Mexico Medical Center ("the Hospital") settled with the plaintiffs. Defendant cites no authority for excluding fees on this basis. The Court finds that plaintiffs' counsel's communications with Mr. Stockberger were appropriate. As plaintiffs' counsel note, Mr. Stockberger's notes were admitted into evidence at trial; he appeared by trial deposition; and his testimony was central to plaintiffs' case. The Court finds that all of the time spent with Mr. Stockberger was reasonable.

### 5. Coming Up to Speed

Defendant next argues that time spent "coming up to speed" should not be allowed. Defendant again cites no authority and fails to point to any specific problematic entry in the time records. Upon this Court's own review, the Court does not find any entry where plaintiffs' counsel billed for "coming up to speed." The Court does not find the entries where plaintiffs' counsel specifically state what aspect of the law they are researching represent "coming up to speed." They simply inform the Court the subject of the research, which is appropriate in providing a sufficiently detailed billing record. Contrary to defendant's contention, the Court finds that plaintiffs' counsel were "optimally efficient with their time."

Within this objection, Defendant also argues that the time spent drafting the findings of fact and conclusions of law, responding to a *Daubert* motion, and drafting a third request for

21

production is "excessive on its face" and the totality of the bill should be reduced.  The Court

finds that plaintiffs' counsel's time in preparing these briefs was reasonable.  Drafting findings and

conclusions is an arduous task, as this Court well knows.  Counsel were required to comb through

voluminous records to develop the findings of fact.  The Court notes that the findings of fact

submitted are very detailed and differ substantially from the Complaint filed at the initiation of this

action; therefore, it is obvious to the Court that plaintiffs' counsel did a substantial amount of

work on the findings of fact.  The Court notes that the conclusions of law reflect a significant

amount of research done by plaintiffs' counsel.  Thus, the Court finds that the hours spent by

plaintiffs' counsel preparing the findings and conclusions were reasonable.

For the response to the *Daubert* motion and the motion to compel, the Court similarly

finds that the hours spent were reasonable.  It was reasonable to spend 11.5 hours to respond to a

*Daubert* motion, which, as plaintiffs point out, included a trip to Albuquerque.  Similarly, it was

reasonable to spend 9.15 hours, including paralegal time, to prepare a motion to compel.

Defendant's arguments here are without merit.


6.  Duplication of Effort

Defendant objects to the fact that two or all three of the lawyers appeared at various

hearings or depositions, because the three lawyers effectively engaged in joint representation.  As

plaintiffs' counsel correctly note, this Court has previously stated that "[w]hile duplicate hours

can properly be deleted, it is the defendant's burden to review the records and identify, with

specificity, which hours submitted are excessive and redundant." *Id.* (citing *Sheets v. Salt Lake

County*, 45 F.3d 1383, 1391 (10th Cir. 1995)) (refusing to disturb district court's attorney's fees

award when defendants asserted that requested fees were duplicative and exorbitant without substantiating their claims).  This is yet another instance where defendant's response and objections are wholly inadequate.  Defendant does not point to any particular deposition or hearing where multiple counsel's appearance was unnecessary.  The Court will not find that having more than one attorney bill for time spent at a deposition or hearing is per se unreasonable. As the Court has stated above,  "[t]ime spent by two attorneys on the same general task is not ... per se duplicative.  Careful preparation often requires collaboration and rehearsal...."  *Lockard*, 162 F.3d at 1077 (10th Cir. 1998) (citing *Rodriguez-Hernandez v. Miranda-Velez*, 132 F.3d 848, 860 (1st Cir. 1998)).

In this case particularly, it was reasonable for two or three attorneys to be present at a hearing or deposition.  The Court does not accept defendant's contention that the attorneys engaged in joint representation.  Certainly there was collaboration among the attorneys, which was reasonable, prudent and expected.  However, the fact remains that these attorneys did not all represent the same plaintiffs.  Mr. Clark represented three plaintiffs and Mr. Hunt and Ms. Hammel represented the other three.  Therefore, the Court finds that at least two lawyers had to be present.  As to whether Ms. Hammel and Mr. Clark needed to both be present at some hearings and depositions, the Court finds that it was necessary.  The Court cannot stress enough the magnitude, complexity, and level of detail involved in prosecuting this case.  There were multiple plaintiffs alleging multiple claims in a civil rights case that required a fact intensive inquiry.  Additionally, hostile environment litigation is an ever-changing and difficult area of the law.  Evidentiary questions which may be routine in other areas of the law are complicated and varied in this type of case.  Further, this Court notes that this case was bitterly fought by the

defendant.  Mr. Hunt successfully litigated the case for approximately two years before the assistance of Ms. Hammel was required.  Her assistance was required because of the growing magnitude of the case, due in large part to the defendant's aggressive trial tactics.  As the Court has previously noted, "the defendant cannot litigate tenaciously and then be heard to complain about the time spent by the plaintiff in response."  *City of Riverside v. Rivera*, 477 U.S. at 580 n.11.

Additionally, had all of plaintiffs' counsel not been present at depositions and hearings, they would still have to relate to the one who did not go what happened, which would have taken a significant amount of time and would not have been as effective.  The attorneys in this case appropriately divvied up tasks among themselves.  However, if one attorney is to do the research for motions and evidentiary matters through trial and another is to conduct the examination of the witnesses at trial, it is most effective for both attorneys to receive necessary information, from a deposition, for example, in order to adequately prepare for their respective tasks.  For the above reasons, therefore, the Court finds that it was reasonable for more than one attorney, even all three attorneys, to be present at hearings and depositions.

### 7.  Paralegal Time

A paralegal's reported hours and requested rates must be analyzed in the same manner as a lawyer's time and rate.  *See Missouri v. Jenkins*, 491 U.S. 274, 285 (1989); *Ramos,* 713 F.2d at 558-59.  Defendants do not seem to object to the rates charged by Ms. Allen and Ms. Jones.  Defendant does not claim a particular rate is more appropriate or that the rate charged is unreasonable, merely that plaintiffs do not make a representation as to their qualifications or the

24

reasonableness of their rates.  The Court agrees that plaintiffs do not offer any evidence of the

prevailing market rate for paralegals practicing in this area or of the customary rates clients are

charged for these paralegals' services.  However, based on its knowledge of the prevailing market

rates in the area and the information gleaned from the billing records about the paralegals' level of

experience, the Court concludes that the requested rates for the paralegals are reasonable.  Ms

Allen and Ms. Jones will be compensated at a rate of $40.00 per hour.

The Court finds that plaintiffs' counsel's time records submitted in support of their fee

application are comprehensive and detailed so that the Court is able to assess the reasonableness

of the time spent.  Reviewing counsel's time records, the Court further finds that the time spent is

reasonable.


8.  Reduction for Pretrial Settlement

Defendant contends that the fee should be dramatically reduced "wholesale" to exclude

the time plaintiffs' counsel spent in pursuing the claims against the Hospital defendants.  As

plaintiffs point out, the Hospital defendants settled in November 1998, so all of the time after that

date is not disputed.  With the respect to the earlier time, plaintiffs are correct that the Tenth

Circuit has already foreclosed defendant's argument.  In *Zurcher v. City and County of Denver*,

997 F.2d 730 (10th Cir. 1993), an excessive force case, the plaintiffs settled with the individual

officer and went to trial against the City and County of Denver.  Denver argued that the plaintiffs

should not be awarded the fees used to prosecute the case against the individual officers.  The

Tenth Circuit rejected that argument and awarded the full award to plaintiffs' counsel, for two

reasons.  The first is that the court found that plaintiffs' claims against the officer were so

intertwined with their claims against Denver that had the officer never been named as a defendant, plaintiffs' counsel would have had to expend the necessary time and effort to challenge the constitutionality of Denver's conduct.  The court also found that "when claims are interrelated and the plaintiff obtains excellent results on one of those claims, a fully compensatory fee should usually be awarded."  *Id.* at 744.  Citing the Supreme Court, the Tenth Circuit stated:

> Many civil rights cases will present only a single claim. In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal  theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.  Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.

*Id.* (citing *Hensley*, 461 U.S. at 435 (citation omitted); *Whalen v. Unit Rig, Inc.*, 974 F.2d 1248, 1253 (10th Cir.1992)).

The Court finds that even if the other defendants had never been named in this case, plaintiffs' counsel would nonetheless have been required to expend the time and effort necessary to challenge Dr. Kapoor's conduct at trial.  Because of the nature of the claims in this case, plaintiffs would have had to have proven virtually the same facts had the Hospital defendants not been named in the suit at all.  Plaintiffs had to prove that Dr. Kapoor acted under color of law. To do that, they needed to develop a factual basis about the Hospital's structure and funding sources.  The factual information that plaintiffs developed about the Hospital, therefore, was also necessary to prosecuting a claim against Dr. Kapoor.  Additionally, plaintiffs had to prove that they were subjected to a hostile work environment.  The conduct of the other defendants was therefore necessary to establish the conditions under which plaintiffs worked.  Dr. Kapoor was

26

charged as a co-defendant for most of the claims against the other defendants.  Therefore, the

information developed about the other defendants was related to and used against Dr. Kapoor.  It

also follows that the time spent on legal research for the Hospital defendants who settled was also

related to and used to prosecute Dr. Kapoor.  Therefore, no reduction is warranted.


### C.  Adjustment in the Lodestar

"The product of reasonable hours times a reasonable rate does not end the inquiry.  There

remain other considerations that may lead the district court to adjust the fee upward or

downward...."  *Hensley*, 461 U.S. at 434.   The Supreme Court noted that those "other

considerations" may be the factors identified in *Johnson v. Georgia Highway Express, Inc.*, 488

F.2d 714, 717-719 (5th Cir. 1974), although a district court "should note that many of these

factors usually are subsumed within the initial calculation of hours reasonably expended at a

reasonable hourly rate."  *Id.*, 461 U.S., at 434, n. 9 (citation omitted).

"Where a plaintiff has obtained excellent results, his attorney should recover a fully

compensatory fee....  In these circumstances the fee award should not be reduced simply because

the plaintiff failed to prevail on every contention raised in the lawsuit."  *Hensley,* 461 U.S. at 435.

At times in its response, defendant argues that plaintiffs should not be awarded full attorneys' fees

because they did not prevail on every issue.   Plaintiff prevailed on most significant issues in this

case. Although plaintiff did not prevail on some claims, the Court finds that those unsuccessful

claims were related to the claims on which plaintiffs succeeded.  As the Supreme Court stated:

> In [some] cases the plaintiff's claims for relief will involve a common core of facts or will
> be based on related legal theories. Much of counsel's time will be devoted generally to the
> litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim
> basis. Such a lawsuit cannot be viewed as a series of discrete claims.  Instead the district

court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Id.* at 435; *see also Jane L. v. Bangerter*, 61 F.3d 1505, 1511 (10th Cir. 1995). All claims made by plaintiffs were based on a common core of facts. The claims on which plaintiffs did not prevail were closely related to the claims on which they did prevail. The time devoted to claims on which plaintiffs did not prevail cannot reasonably be separated from time devoted to claims on which plaintiffs did prevail. The Court finds in this case that a reduced fee award is not appropriate. In light of the litigation as a whole, plaintiffs overwhelmingly prevailed. The relief was in no way limited. Plaintiffs are therefore entitled to reasonable attorneys' fees without a reduction.

Despite plaintiffs' overwhelming success, however, the Court will not enhance the award. Fee enhancements for the tenaciousness of defense counsel, the special skill and experience of counsel, the quality of representation, the novelty and complexity of the issues, and the results obtained are proper only in the rare and exceptional case. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564-65 (1986) (*"Delaware Valley I"*) (internal quotations omitted). This is because the "novelty [and] complexity of the issues," "the special skill and experience of counsel," the "quality of representation" and the "results obtained" from the litigation are fully reflected in the lodestar amount, and thus cannot serve as independent bases for increasing the basic fee award. *See Delaware Valley I*, 478 U.S. at 565 (citing *Blum*, 465 U.S. at 898-900). The Supreme Court stated that although upward adjustments of the lodestar figure are still permissible, such modifications are proper only in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts. *Id.* (citing *Blum*, 465 U.S. at 898-901).

Although the Court finds that the factors cited above entitle plaintiffs to a fully

28

compensatory fee, it does not find the presence of additional factors, beyond those already subsumed in the lodestar figure, that would entitle plaintiffs' counsel to an enhancement of the fee award.  *See Delaware Valley I*, 478 U.S. at 566-67.

In sum, Mr. Clark's award is reduced by 41.4 hours for a total award of $191,963.59. Ms. Hammel's award is reduced by 0.6 hours for a total award of $63,947.78.  Ms. Allen's award is reduced by 10 hours, for a total award of $8,730.87.


## III.  Attorneys' Fees for Fee Petition

Plaintiffs' counsel are entitled to attorneys' fees for time spent preparing the fee petition. *See Love v. Mayor, City of Cheyenne, Wyo.*, 620 F.2d 235, 237 (10th Cir. 1980).  However, the Court will not allow all of the charges claimed by counsel.  For Mr. Clark, the Court will not allow costs incurred to prepare the time record or to fax bills to Mr. Fenstermacher.  Thus, the Court will compensate only 5.6 hours of his time.  The Court will disallow 0.3 hours for Mr. Hunt for time spent preparing his time record.  He will be compensated for 5.8 hours.  For Ms. Hammel, the Court will not allow time spent for e-mailing the caption to Phil Davis; assembling sample affidavits and e-mail to co-counsel; picking up and faxing Phil Davis' affidavit to co-counsel.  Her time will accordingly be reduced by 0.7 hours, and she will be compensated for a total of 18 hours.  Therefore, the total costs awarded for preparing the fee petition are $894.60 for Mr. Clark; $1,544.25 for Mr. Hunt; and $2,856.94 for Ms. Hammel.

## CONCLUSION

**IT IS THEREFORE ORDERED** that plaintiffs are awarded $18,160.28 in costs and

$434,040.61 in attorneys' fees for the litigation, plus an additional $5,295.79 in fees for preparing

the fee petition.

Dated this 12th day of June, 2001.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

<u>Attorneys for Plaintiffs</u>
Randy Clark
Tandy Hunt
Kathryn Hammel

<u>Attorney for Defendant</u>
Mark Jarmie