**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

ANNA NIETO, BETTY DELOSANTOS,
PATRICK SANCHEZ, SALLY NETSCH,
PHYLLIS DEBAUN, and MARY GONZALES,

      Plaintiffs,

vs.                                                                                                                                 CIV No. 96-1225 MV/JHG

QUADRAT KAPOOR,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on remand from the Tenth Circuit and on Plaintiffs-Appellees' Motion for Litigation Expenses and Attorneys' Fees **[Doc. No. 415]**. Having considered the motion, briefs, relevant law, and pursuant to the Tenth Circuit's Order, the Court has determined the appropriate amount for appeal-related attorneys' fees and other costs as further explained below.

**BACKGROUND**

This case involved a hostile environment case brought by six former employees of Eastern New Mexico Medical Center ("ENMMC") against Dr. Quadrat Kapoor, the Medical Director of the Radiation Oncology Department of ENMMC. Plaintiffs initially named ENMMC and a number of ENMMC supervisors as defendants (collectively "ENMMC Defendants"). The ENMMC Defendants settled with Plaintiffs, and the claims against those defendants were subsequently dismissed. Therefore, Dr. Kapoor was the sole defendant who went to trial.

On the eve of trial, Dr. Kapoor filed for bankruptcy. As a consequence of Dr. Kapoor's bankruptcy filing, an automatic stay went into effect, preventing the trial from moving forward. Plaintiffs' counsel hired Donald Fenstermacher, an attorney skilled in bankruptcy law, to assist in the bankruptcy proceedings. Mr. Fenstermacher entered his appearance and successfully argued before the bankruptcy court, which lifted the stay and permitted the trial to proceed.

Plaintiffs prevailed after a bench trial and was awarded a judgment of $3,750,000. Defendant Dr. Kapoor appealed this Court's findings of fact and conclusions of law, which was subsequently affirmed by the Tenth Circuit. *See Nieto v. Kapoor*, 268 F.3d 1208 (10th Cir. 2001) ("Nieto I"). Plaintiffs then submitted to the Tenth Circuit a Bill of Costs **[Doc. No. 416]** and a Motion for Litigation Expenses and Attorneys' Fees **[Doc. No. 415]**. On December 20, 2001, the Tenth Circuit issued an order granting Plaintiffs' Bill of Costs in the amount of $133.73 for reproduction of their brief, but denying any reimbursement of the cost of reproducing other documents for the appeal. *See Nieto v. Kapoor*, No. 00-2121, slip op. at 2 (10th Cir. Dec. 20, 2001) ("Nieto II"). In its Order, the Tenth Circuit also found the cost of transcript production to be taxable, and granted Plaintiffs' request for appeal-related attorneys' fees and expenses. *Id.* The matter was then remanded to this Court to determine the appropriate amount of the Tenth Circuit's award.

## STANDARD

A court may award reasonable appellate costs and attorneys' fees to the prevailing civil rights plaintiff under 42 U.S.C. § 1988. *See Hutto v. Finney*, 437 U.S. 678, 693 (1978). "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v.*

*Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278- 279 (1st Cir. 1978)).

A starting point in determining the appropriate amount of attorneys' fees is the computation of "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Ellis v. University of Kansas Med. Ctr.*, 163 F.3d 1186, 1202 (10th Cir. 1999) (quotations omitted).

> Compiling raw totals spent, however, does not complete the inquiry. It does not follow that the amount of time *actually* expended is the amount of time *reasonably* expended. In the private sector, "billing judgment" is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983) (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)), *overruled on other grounds by Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987). "Items that are normally itemized and billed in addition to the hourly rate should be included in fee allowances in civil rights cases if reasonable in amount." *Ramos*, 713 F.2d at 559. Plaintiffs bear the ultimate "burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986).

## DISCUSSION

Defendant makes the following objections regarding the fees and costs requested by Plaintiffs: (1) this case did not require four attorneys to participate in the appeal process; (2) the Court should not reimburse Plaintiffs for Mr. Fenstermacher's fees because they were not directly related to this appeal; (3) various costs and expenses for moot court sessions and for the attendance of the Plaintiffs themselves, in addition to their lawyers, at oral arguments before the Tenth Circuit are not

reimbursable; and (4) the Court should grant only the fees and costs for Mr. Hunt because he was the attorney responsible for oral argument before the Tenth Circuit. The Court will address each of these contentions in its analysis below.

I.  **Calculation of Attorneys' Fees**

Defendant takes issue with Mr. Fenstermacher's fees for his participation in the bankruptcy proceedings. Counsel may be awarded fees, even though they did not enter an appearance on the case, if their efforts were "actually necessary or essential to proper representation." *Case v. Unified School District No. 233*, 157 F.3d 1243, 1252 (10th Cir. 1998). Plaintiffs contend that Mr. Fenstermacher was successful in lifting the bankruptcy stay, which allowed the case to proceed. Since his services obtained a concrete result that advanced the litigation and ultimately assisted in Plaintiffs' success in this litigation, his services should be remunerated.

Next, Defendant contends that three attorneys were not required for the success of this appeal. There is no automatic reduction for several attorneys working on the same case. *See Ramos*, 713 F.2d at 554 ("[W]e decline to require an automatic reduction of reported hours to adjust for multiple representation . . . ."). The record shows that all three attorneys did extensive work on this appeal. Having reviewed the hours requested by the attorneys in this case, the Court finds that the hours of Ms. Hammel, Mr. Clark, and Mr. Fenstermacher are well documented, reasonable, and not prohibited by law. Accordingly, the Court finds that these hours should be reimbursed in their entirety. However, Mr. Hunt's requested hours will be reduced, as discussed below.

While all four attorneys may have been necessary for success at the appellate level, this does not mean that all of the hours recorded by the attorneys were billable.

> Another factor the court should examine in determining the reasonableness of hours expended is the potential duplication of services. For example, [if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time . . . . The court should assess the possibility that reported hours included duplication by reviewing with particular care the number of lawyers present at hearings, depositions, and other discovery proceedings, and by evaluating the roles played by the lawyers in the litigation generally. The court can look to how many lawyers the other side utilized in similar situations as an indication of the effort required.

*Ramos*, 713 F.2d at 554 (internal citation and quotations omitted).

In reviewing the timekeeping of attorneys Hunt and Clark, this Court noticed much duplicative effort in the records. Closer review indicated that the records were essentially identical in every respect, including typographical errors. Since the announcement of *Ramos*, it has been the rule in this Circuit that

> [I]f [attorneys] intend to seek attorney's fees under § 1988 they must keep meticulous, contemporaneous time records to present to the court upon request. These records must reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks—for example, how many hours were spent researching, how many interviewing the client, how many drafting the complaint, and so on.

*Ramos*, 713 F.2d at 553. This Court is also mindful that "'[t]he district court should give special scrutiny to any reconstructions or estimates of time expended and make reductions when appropriate.'" *Id.* n.2 (citing *Hensley*, 461 U.S. at 433–434).

"Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley*, 461 U.S. at 433. In the present case, the Court finds that the documentation of some of Mr. Hunt's hours were duplicative of his associate Mr. Clark's hours, and that Mr. Hunt also may have reconstructed his hours from Mr. Clark's timekeeping records. For example, both

5

attorneys did not need, and could not have written, the same letter to the Clerk of the Court indicating that a transcript had been ordered. Yet, both attorneys billed for this task on June 16, 2000. This method of recording billable hours does not reflect compliance with the requirement of contemporaneous timekeeping. The Court will, thus, reduce Mr. Hunt's total hours by 50.8 hours.

Therefore, the attorneys' fees, including tax, should be awarded as follows: (1) $24,172.87 for Kathryn Hammel; (2) $35,192.93 for Randy Clark; (3) $46,008.00 for Tandy Hunt; and (4) $2,209.46 for David Fenstermacher.[1] The total attorneys' fees to be awarded are $107,583.26.

## II. Calculation of Appellate Costs

Mr. Hunt was the sole attorney to address the Tenth Circuit at oral argument. However, Mr. Clark and Ms. Hammel also attended oral argument, as did all five Plaintiffs in this case. Plaintiffs now seek reimbursement for the costs of attendance by all three attorneys and Plaintiffs.

In *Bee v. Greaves,* 910 F.2d 686 (10th Cir. 1990), counsel advanced the costs of the plaintiff's presence at trial, as well as the cost of his own attendance at oral argument in Denver. The Tenth Circuit held that:

> Because the expenses incurred by Bee's attorney in traveling to Denver for oral argument are of a type that might be included in an attorney's bill, the court on remand should determine specifically whether such expenses are normally billed to a private client in the local area and, if so, evaluate the reasonableness of the amount. On the other hand, the expenses incurred in procuring Bee's presence at trial are clearly not the type of travel expenses normally incurred by an

---

[1] The Court notes that Mr. Fenstermacher's actual billable hours resulted in $11,500.50 in fees. However, Mr. Clark and Mr. Hunt have paid a total of $9,291.04 for Mr. Fenstermacher's services and are claiming reimbursement of these payments as costs, resulting in a balance of $2,209.46 due to Mr. Fenstermacher.

6

> attorney and billed to a client. Accordingly, the court properly refused
> to award them as costs.

*Id.* at 690.

With regard to the costs of three attorneys being present during oral argument before the Tenth Circuit, the Court notes that all three attorneys performed significant work on the appeal. Both Ms. Hammel and Mr. Clark were involved in the preparation of the appellate briefs. During oral argument, while only one attorney may address the court, it is often the case that co-counsel will be consulted. Travel, lodging, and meals expenses incurred during oral argument are reasonably billable to a private client and are therefore compensable. *Id.* Therefore, Defendant must compensate Mr. Clark and Ms. Hammel for the costs of their attendance before the Tenth Circuit. However, pursuant to *Bee v. Greaves*, an attorney would not advance the costs of the attendance of the client and then charge the client for those same costs. *Id.* Thus, the expenditures from the attendance of the five plaintiffs are not recoverable and will be reduced from the costs requested by Mr. Clark and Mr. Hunt.

    A.    <u>Randy Clark</u>

Mr. Clark has requested $6,990.73 for expenses advanced during the course of the appeal. Of this amount, $6,369.85 were Mr. Fenstermacher's fees which were advanced by Mr. Clark. Upon review of Mr. Clark's cost calculation and submitted receipts, the Court finds that these amounts are reasonable and not prohibited. However, one entry in Mr. Clark's record of costs shows expenses for a meal with the clients at oral argument in Denver, totaling $209.61. This amount will be reduced by $150, to reflect the cost of the clients' meals. Therefore, the appropriate amount of costs for Mr. Clark is $6,840.73.

B.  <u>Tandy Hunt</u>

Mr. Hunt has requested $7,594.41 in advanced expenses; of this amount, $2,922.19 are fees paid to Mr. Fenstermacher. He also has charged $78.80 for "in house copies of trial transcript, briefing, for oral argument notebooks, copies of 10th circuit authority." However, in its Order, the Tenth Circuit granted costs to Plaintiffs in the amount of $133.73. *See Nieto II*, slip. op at 2. The Tenth Circuit also opined that under Rule 39 of the Federal Rules of Appellate Procedure, the cost of reproduction of other documents used for the appeal are not reimbursable. Accordingly, the Court will reduce the total amount by $78.80.

Mr. Hunt also advanced the hotel costs for himself and five plaintiffs at the Double Tree Hotel in Denver. The total cost for this lodging was $2,055.20. The Court will reduce this amount by $1,644.16, the amount for Plaintiffs' lodging. Additionally, the Court finds the expenditure of $197.17 for meals on May 14, 2001, to be unreasonable and will reduce that amount by $100.00. Mr. Hunt also requests reimbursement for costs of $1,817.33 in moot court preparation for oral arguments before the Tenth Circuit. The Court finds that, in light of the attorneys' lack of experience in federal appellate matters, such costs are reasonable and appropriate and should, thus, be reimbursed. Therefore, the appropriate amount of costs for Mr. Hunt is $5,771.45.

C.  <u>Kathryn Hammel</u>

Ms. Hammel has requested $566.51 in costs. Upon review of her costs calculation and submitted receipts, the Court finds that these costs are both reasonable and not prohibited. Therefore, the total will be granted in full. However, since the Tenth Circuit has already granted $133.73 for costs for reproduction of Plaintiffs' briefs and has found no other reproduction costs to

8

be reimbursable, the Court will not include the additional $287.04 in photocopying costs requested by Ms. Hammel.

   D.   Totals

Therefore, the Court finds the following costs to be awarded to Plaintiffs: (1) $6,840.73 for expenses by Randy Clark; (2) $5,771.45 for expenses by Tandy Hunt; and (3) $566.51 for expenses by Kathryn Hammel. The total costs due to Plaintiffs is $13,178.69.


**III.   Cost of Preparing Fee Petition**

The cost of preparing the fee petition is also compensable. *See Love v. Mayor of Cheyenne*, 620 F.2d 235, 237 (10th Cir. 1980) (citing *Bagby v. Beal*, 606 F.2d 411 (3d Cir. 1979)). Accordingly, the Court will grant Ms. Hammel $2,501.72, including taxes and expenses, for 14.8 hours of work spent preparing the fee petition.


**IV.   Post Appeal Status Conference**

Mr. Hunt and Mr. Clark should also receive reimbursement for fees incurred for the post-appeal status conference. However, they are reminded that copies of the contemporaneous timekeeping records are required for such an award. The time expended in travel, preparation, and attendance of the conference is explained in the fee request; however, the records are not appended. As the fees seem reasonable for the effort expended in attempts to effectuate the resolution of this matter, the Court will grant Mr. Clark $1,895.91 and Mr. Hunt $2,928.75. These amounts include taxes and costs for travel.

**V.     Bill of Costs Submitted to the Tenth Circuit**

The Court of Appeals has previously granted costs in the amount of $133.73 for reproduction of Plaintiffs' brief pursuant to Rule 39(c) of the Federal Rules of Appellate Procedure. *See Nieto II*, slip op. at 2. Moreover, the cost of transcript production is taxable in the district court. *See id.* (citing FED. R. APP. P. 39(e)(2)). The stenograph invoice states that the cost of transcript production was $1,404.18; thus, this amount should also be included in the final award.

**IT IS THEREFORE ORDERED** that Plaintiffs' award for appeal-related attorneys' fees and costs is as follows: (1) $107,583.26 in attorneys' fees; (2) $13,178.69 for costs expended by the attorneys; (3) $2,501.72, including fees, taxes, and expenses, for preparation of the fee petition; (4) $4,824.66 for preparation and attendance of the December 6, 2001 post-appeal status conference; (5) $133.73 for the costs of reproduction of appellate briefs; and (6) $1,404.18 for the cost of transcript production.

Dated this 27th day of August, 2002.

                                                                            _____
                                                                            MARTHA VÁZQUEZ
                                                                            UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiffs:
Randy Clark, Esq.
Tandy L. Hunt, Esq.
Kathryn A. Hammel, Esq.

Attorneys for Defendant, Third-Party Plaintiff, and Counter-Defendant:
Mark D. Jarmie, Esq.
Eric S. Jeffries, Esq.
Ripley B. Harwood, Esq.
Gerald G. Dixon, Esq.

<u>Attorneys for Trustee in Bankruptcy</u>:
William H. Carpenter, Esq.
William E. Snead, Esq.

<u>Attorneys for Third-Party Defendants and Counter-Claimants</u>:
William P. Gralow, Esq.
Maureen A. Sanders, Esq.
Terry R. Guebert, Esq.
RaMona G. Bootes, Esq.